Pro Se Plaintiff
Address of file under seal
3015417061
myles.w.akacomplainant@gmail.com

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

JOHN DOE,

               Plaintiff,

vs.

CHARLOTTE BURROWS,
               Defendant

FILED UNDER SEAL

Case No.: 24-cv-03570

PLAINTIFF'S MOTION FOR
CLARIFICATION AND FOR LEAVE TO
FILE A SUPPLEMENTAL PLEADING

Plaintiff John Doe, proceeding pro se, respectfully moves this Court pursuant to Federal Rules of Civil Procedure 60(a) and 15(d), and Local Civil Rule 7, for an order clarifying and correcting certain aspects of the Court's June 13, 2025 Memorandum Opinion and Order (ECF No. 20), and granting leave to file a limited supplemental pleading. In support of this motion, Plaintiff states as follows:

INTRODUCTION

On June 13, 2025, this Court denied Plaintiff's fourth Motion to Proceed Pseudonymously and reconsidered prior sealing orders in this case (ECF No. 20). In doing so, the Court's opinion appeared to characterize this suit narrowly as a Freedom of Information Act ("FOIA") dispute, overlooking critical elements of Plaintiff's claims and evidence. Plaintiff respectfully seeks clarification under Rule 60(a) to ensure that the record accurately reflects the nature of his claims, the risks he faces if identified, and the applicable legal precedents on

PLAINTIFF'S MOTION FOR CLARIFICATION AND FOR LEAVE TO FILE A SUPPLEMENTAL PLEADING - 1

RECEIVED

JUN 30 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

pseudonymity. Specifically, Plaintiff submits that the Court may have misapprehended the core of the action – a military whistleblower retaliation and records-correction claim – and thus omitted or gave insufficient weight to key facts and authorities that materially affect the pseudonymity analysis.

Federal Rule of Civil Procedure 60(a) permits the Court to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Here, clarification is warranted to correct omissions or misunderstandings in the Opinion regarding Plaintiff's allegations and the governing law on pseudonymous litigation. Additionally, Plaintiff moves under Rule 15(d) for leave to supplement his Complaint with newly obtained evidence that further substantiates his claims and the need for continued anonymity. This motion is filed under seal pursuant to the protective order in place, and in accordance with Local Civil Rule 7. See footnote 1. Plaintiff has conferred with Defendants' counsel pursuant to Local Rule 7(m) and understands that Defendants oppose the relief sought.

BACKGROUND

Nature of the Case: Plaintiff is a former U.S. Coast Guard member who contends that he was subjected to unlawful retaliation after engaging in protected whistleblower activity. His operative Complaint, while including a FOIA count, principally seeks relief under the Military Whistleblower Protection Act, 10 U.S.C. § 1034, and related correction-of-military-records provisions. In essence, Plaintiff alleges that he was wrongfully discharged based on a pretextual medical diagnosis and other retaliatory actions, after he reported misconduct. He is pursuing the correction of his service records and accountability for the retaliatory acts. These claims involve sensitive personal matters – including Plaintiff's medical condition and

PLAINTIFF'S MOTION FOR CLARIFICATION AND FOR LEAVE TO FILE A SUPPLEMENTAL PLEADING - 2

whistleblower reports – which form the gravamen of the lawsuit, far beyond a routine FOIA dispute.

Prior Proceedings on Anonymity: Given the highly personal and sensitive nature of his allegations, Plaintiff has proceeded under the pseudonym "John Doe" under a protective order. Plaintiff filed multiple motions to continue pseudonym status. On June 13, 2025, the Court denied Plaintiff's most recent motion to proceed pseudonymously (ECF No. 20), thereby directing that Plaintiff's identity be revealed and previously sealed filings be reconsidered. The Court's opinion indicated that it viewed Plaintiff's case largely as a FOIA matter and, based on that framing, concluded that Plaintiff did not meet the stringent standard for pseudonymity under In re Sealed Case, 971 F.3d 324 (D.C. Cir. 2020). Plaintiff respectfully contends that this conclusion was reached under an incomplete understanding of the record and applicable precedent. On June 15, 2025, Plaintiff timely filed a Notice of Intent (ECF No. 21) informing the Court of his plan to seek clarification under Rule 60(a) "to ensure the accuracy of the judicial record." This motion follows promptly thereafter.

New Evidence Obtained: Since the last briefing on pseudonymity, Plaintiff has obtained significant new evidence supporting his underlying claims and reinforcing the need for anonymity. In particular, Plaintiff has secured sworn declarations from two independent civilian ophthalmologists who dispute the original diagnosis of "glaucoma" that was used to justify his discharge. Plaintiff has also obtained contemporaneous U.S. Coast Guard log entries and records indicating procedural irregularities in the handling of his medical evaluation and separation. This evidence, which was not before the Court at the time of its June 13 ruling, lends credence to Plaintiff's assertion that his removal was retaliatory and not medically warranted. Plaintiff now seeks leave under Rule 15(d) to supplement the complaint with this new evidence, as it occurred

or came to light after the initial pleadings. The supplemental material is brief (a one-page

supplemental pleading attaching the new declarations and records) and will not expand the scope

of the case, but will aid the Court's evaluation of Plaintiff's claims and the risks attendant to

revealing his identity.

POINTS WARRANTING CLARIFICATION

Plaintiff respectfully submits that clarification is needed in three critical areas: (A)

the Court's understanding of the core nature of Plaintiff's claims; (B) the Court's assessment of

the risks of harm and retaliation Plaintiff faces if identified; and (C) the Court's consideration of

the applicable legal standard and precedents governing pseudonymity. Each is addressed in turn.

A. Misapprehension of the Core Allegations and Claims

The Court's Memorandum Opinion appears to construe Plaintiff's lawsuit

predominantly as a FOIA dispute, omitting the central thrust of his allegations: that this is a

military whistleblower retaliation and records correction case at its heart, with the FOIA claim

being ancillary. The opinion's narrow characterization risks overlooking the very justification for

Plaintiff's fear of disclosure. Plaintiff's Complaint makes clear that he invokes 10 U.S.C. § 1034

(the Military Whistleblower Protection Act) to challenge his discharge from the Coast Guard as

an unlawful reprisal for protected disclosures. He also seeks correction of his military records

(including medical findings) and other relief to remedy the retaliation. These claims were only

briefly acknowledged in the Court's opinion. Respectfully, Plaintiff submits that this omission is

material: by treating the case as "merely a FOIA dispute," the Court did not fully appreciate the

context and stakes of Plaintiff's pseudonymity request.

Unlike a typical FOIA suit brought by a disinterested requester seeking government transparency, Plaintiff's action involves deeply personal grievances and protections analogous to an employment retaliation or whistleblower case. The FOIA aspect (seeking agency records) is a means to an end – helping Plaintiff vindicate his whistleblower rights and clear his name – rather than the end itself. Indeed, Plaintiff's FOIA requests are aimed at obtaining documents related to the alleged retaliation and the questionable medical discharge. Thus, the subject matter of this litigation is inextricably tied to Plaintiff's personal medical history, his whistleblowing activities, and the alleged misconduct of agency officials toward him.

This distinction is critical because courts recognize that "preserving privacy in a matter of [a] sensitive and highly personal nature" is a primary factor favoring pseudonymity in exceptional cases. In re Sealed Case, 971 F.3d 324, 326–27 (D.C. Cir. 2020). By focusing on FOIA, the Court's analysis did not expressly address whether Plaintiff's medical condition and treatment, and his status as a whistleblower, qualify as "sensitive and highly personal" matters. Plaintiff contends that they do. His medical diagnosis (glaucoma) – now called into question as erroneous – and the circumstances of his discharge are deeply personal. Being publicly identified as a former service member who was discharged for a serious medical condition (which he asserts was misdiagnosed) could expose Plaintiff to significant stigma and misunderstanding. Moreover, his role as a whistleblower who challenged wrongdoing within his unit is inherently sensitive; public identification could not only chill Plaintiff's own rights but also deter others from coming forward in similar circumstances, for fear of being outed and retaliated against.

In short, Plaintiff asks the Court to clarify its opinion to reflect that this lawsuit is not a garden-variety FOIA case, but rather a whistleblower retaliation action with accompanying FOIA and record-correction components. This clarification matters because it affects the

PLAINTIFF'S MOTION FOR CLARIFICATION AND FOR LEAVE TO FILE A SUPPLEMENTAL PLEADING - 5

application of the In re Sealed Case factors. When properly viewed in context, Plaintiff's case implicates precisely the kind of personal, retaliatory, and reputational concerns that past courts in this District have found to justify anonymity. See, e.g., Doe v. Department of the Navy, No. 24-3403 (D.D.C. Jan. 27, 2025) (granting motion to proceed under pseudonym upon reconsideration, where pro se military plaintiff alleged he was denied a Navy commission in retaliation for protected activity and faced personal and professional harm if named) see n.2; Doe v. Blinken, 558 F. Supp. 3d 175 (D.D.C. 2021) (allowing a State Department employee to litigate under a pseudonym in a whistleblower-type case involving medical and safety concerns, recognizing the highly personal nature of the claims); In re Sealed Case, 971 F.3d 324, 328 (D.C. Cir. 2020) (emphasizing that cases involving "personal medical…[and] retaliatory harm" allegations may weigh in favor of pseudonymity).

By correcting the record to accurately describe Plaintiff's claims as a military whistleblower retaliation and records-correction matter, the Court will be able to reassess the pseudonymity question under the proper lens.

B. Risks of Retaliation, Harm, and Stigma to Plaintiff if Identified

Plaintiff also seeks clarification because the Court's opinion, in his view, did not fully account for the concrete risks of harm he faces if his identity becomes public. In denying pseudonymity, the Court may have regarded Plaintiff's fears as speculative or not compelling. Plaintiff respectfully submits that this conclusion arose from an incomplete understanding of the evidence and circumstances, and that when the entire picture is considered, Plaintiff's fears are both substantiated and legally significant.

1.    Professional and Reputational Retaliation: Plaintiff has a well-founded fear that disclosing his identity in this litigation will subject him to professional retaliation and irreparable reputational

harm in his field. As a former Coast Guard officer who blew the whistle on alleged misconduct, Plaintiff's career in the military or related government sectors could be effectively blacklisted if his name is publicized in connection with accusations against his superiors. It is widely recognized that being known as a whistleblower — especially one who sued a federal agency — can make future employers (particularly in government or defense contracting) hesitant to hire or work with that person. Plaintiff has already experienced difficulty finding equivalent employment, and he reasonably believes that public exposure as the plaintiff in this case will "brand" him in a way that forecloses career opportunities. Such professional retaliation, while perhaps not violent, is a form of severe harm: it would punish Plaintiff for exercising his rights and could permanently derail his livelihood. Courts have acknowledged that fear of career-ending retaliation or ostracism can support anonymity when clearly grounded in the facts of the case. See Doe v. Department of the Navy, supra (plaintiff's declarations demonstrated that public identification during pending military proceedings could end his career, supporting pseudonymity); Doe v. Blinken, 558 F. Supp. 3d at 177–78 (noting that the plaintiff's career and community standing would be jeopardized by disclosure of his identity alongside unproven allegations, and permitting use of a pseudonym).

   In Plaintiff's case, the risk is not speculative. The very nature of his whistleblower allegations implies hostility from certain officials. By coming forward, he challenged actions that, if proven, could embarrass or implicate individuals in wrongdoing. Making his name public could invite reprisal from those individuals or their allies, such as negative references, dissemination of damaging information from his personnel file, or other efforts to tarnish his reputation in professional circles. The new evidence Plaintiff has obtained underscores this risk: the Coast Guard logs documenting procedural deviations in his discharge suggest that officials

PLAINTIFF'S MOTION FOR CLARIFICATION AND FOR LEAVE TO FILE A SUPPLEMENTAL PLEADING - 7

deviated from standard protocols, which could be viewed as retaliatory or bad-faith conduct. If those details are litigated in open court with Plaintiff's name attached, it is reasonable to fear those officials may feel personally accused and seek to defend themselves in the court of public opinion by attacking Plaintiff's character or credibility. Anonymity would prevent the litigation from devolving into an ad hominem contest and keep the focus on the merits.

2.       Medical Privacy and Emotional Harm: Plaintiff's medical history is at the center of this case. He was diagnosed (perhaps misdiagnosed) with an eye disease (glaucoma) which was cited as a basis for discharging him. Public disclosure of his identity inherently publicizes this sensitive medical information. Even aside from the whistleblower aspect, Plaintiff has a strong privacy interest in keeping his medical condition confidential. Being labeled as "the Coast Guard officer with glaucoma who sued the agency" is not only embarrassing but could subject Plaintiff to unwarranted stigma and personal distress. Although glaucoma is not a disgraceful condition, the context here suggests the diagnosis might have been contrived; thus, if the case were public, Plaintiff would be forced to either accept a false medical label or publicly litigate his health to prove it wrong – a lose-lose situation in terms of privacy and dignity.

The Court's opinion did not substantially discuss Plaintiff's interest in maintaining the confidentiality of his medical records and health status. Under In re Sealed Case, however, "medical concerns" are explicitly cited as examples of matters that are sensitive and highly personal such that pseudonymity may be justified. 971 F. 3d at 327. Indeed, courts frequently allow pseudonyms in cases involving medical issues (especially mental health, reproductive health, or HIV status) due to the potential for stigma or personal harm. Here, while glaucoma itself might not carry the same stigma as some other conditions, the implication in

PLAINTIFF'S MOTION FOR CLARIFICATION AND FOR LEAVE TO FILE A SUPPLEMENTAL PLEADING - 8

Plaintiff's allegation is that the medical finding was wrongful – essentially, that he was falsely branded as medically unfit. If his name is made public, that false branding becomes attached to his real identity. This could cause him significant emotional distress (knowing that acquaintances, employers, or anyone Googling his name would see an association with a disqualifying medical condition and a legal battle over it). It could also diminish Plaintiff's standing in his community; people often do not grasp the nuances of a case, and may assume "where there's smoke, there's fire," i.e., that Plaintiff really had a serious condition or did something to warrant discharge.

Additionally, Plaintiff has described the psychological toll the entire ordeal has taken on him. The process of being ostracized and discharged from a "warrior" culture unit has caused mental anguish. Publicly relitigating these issues under his own name — potentially in press coverage or on the internet — would compound that harm. The prospect of being identified has already caused Plaintiff great anxiety, which in itself is a form of present mental harm the Court should weigh. In similar cases, courts have credited such mental-health risks. See Doe v. Department of Defense, No. 22-3474 (D.D.C. Feb. 29, 2024) (Contreras, J.) (permitting a former intelligence officer to proceed under pseudonym where disclosure of her identity could impair her future career and "crucially, place her and her loved ones at risk of retaliation," and noting the significant stress already caused by the prospect of exposure); Doe v. U.S. Dep't of State, No. 15-cv-01971, 2015 WL 9647660, at *3 (D.D.C. Nov. 3, 2015) (allowing pseudonym because revealing the plaintiff's work for U.S. efforts abroad would endanger him and cause severe emotional distress to his family).

**3.**      Risk of Personal Retaliation or Threats: In Plaintiff's case, the primary retaliation feared is professional and reputational, as described. To be clear, Plaintiff is not alleging an imminent risk

of physical harm or violence akin to what, for example, an undercover agent or an asylum seeker might face. However, the absence of a death threat is not dispositive. The D.C. Circuit's test looks to "risk of retaliatory physical or mental harm" to the plaintiff or innocent others. In re Sealed Case, 971 F.3d at 326. The harm Plaintiff fears — destruction of his career and public vilification — can be viewed as a form of retaliatory harm that is primarily mental (psychological trauma, stress) and economic, rather than physical. The Court in its prior ruling may have underweighted these types of harm, perhaps considering them too speculative or not severe enough. Plaintiff respectfully urges reconsideration: the harm he risks is unusually severe in the context of professional life, potentially ending the career he has built and aspired to. Moreover, it would send a chilling message to other service members who might witness Plaintiff's public ordeal and choose not to report wrongdoing for fear of suffering a similar fate.

Plaintiff also notes that his fears are not just self-serving; they extend to innocent third parties. If his identity is revealed and retaliation ensues, it could negatively impact his family members who rely on him, or colleagues who might be associated with him. For instance, Plaintiff has relatives and mentors in the military community whose reputations or opportunities could suffer guilt-by-association if Plaintiff is cast in a negative light publicly. In In re Sealed Case, the court specifically mentioned that consideration should be given to whether "innocent non-parties" could face harm upon a plaintiff's identification. 971 F.3d at 326. Here, while the risk to others is more attenuated than in cases involving, say, foreign regimes or dangerous private actors, it is not nonexistent. Plaintiff's wife and children (if any) or other family could experience harassment or distress if the details of this case (and by extension, of Plaintiff's

personal life) become public. This factor may not have been addressed in the Opinion, and

Plaintiff asks the Court to consider it.

In sum, Plaintiff seeks a clarification or correction of the Court's analysis to

explicitly recognize the specific professional, reputational, and psychological harms that

disclosure of his identity would likely cause. These harms are concretely supported by Plaintiff's

affidavits and the nature of the evidence (including the new medical and log evidence

demonstrating the contested and possibly unjust nature of his discharge). Recognizing these

harms aligns Plaintiff's situation with those of other litigants who have been permitted

pseudonymity in this Circuit. For example, in Doe v. Department of the Navy (cited above),

Chief Judge Boasberg ultimately found that the plaintiff had shown a sufficient risk of retaliatory

harm (including the possibility of persecution by a foreign government due to the plaintiff's

country of origin and activities as a journalist) and mental harm, tipping the balance in favor of

anonymity. While Plaintiff's case involves domestic retaliation rather than foreign, the

underlying principle is the same: if a plaintiff reasonably fears severe repercussions as a result of

public identification, and those fears are supported by the record, the court should weigh that

heavily in the pseudonymity balance.

C. Overlooked Precedents and Legal Standards Supporting Pseudonymity

Finally, Plaintiff believes the Court's opinion may have omitted discussion of, or

failed to give due weight to, recent precedent in this District that is highly pertinent to Plaintiff's

pseudonym motion. The Court correctly invoked In re Sealed Case (D.C. Cir. 2020) as

controlling authority, but in applying its multi-factor test the Court did not reference several on-

point decisions where pseudonymity was granted in analogous circumstances. Plaintiff

PLAINTIFF'S MOTION FOR CLARIFICATION AND FOR LEAVE TO FILE A SUPPLEMENTAL PLEADING
- 11

respectfully calls the Court's attention to those cases now, as they materially reinforce Plaintiff's position that proceeding under a pseudonym is warranted here.

1.      In re Sealed Case (D.C. Cir. 2020) – The Balancing Test: The D.C. Circuit in In re Sealed Case, 971 F.3d 324, established that permission to proceed pseudonymously is a "rare dispensation" from the normal rule of open litigation, available only when a plaintiff's privacy or safety interests substantially outweigh the presumption of transparency in judicial proceedings. Id. at 325–26. The Court must "balance the litigant's legitimate interest in anonymity against countervailing interests in full disclosure." Id. at 326. The Circuit outlined five non-exhaustive factors to guide this balance: (1) whether the case involves matters that are "highly sensitive and [of a] personal nature," (2) whether identification poses a risk of retaliatory physical or mental harm to the plaintiff or innocent others, (3) the age of the persons whose privacy interests are at stake (e.g. minors), (4) whether the action is against a governmental or private party (including the nature of the defendant's interest in disclosure), and (5) the risk of unfairness to the opposing party if anonymity is maintained. Id. at 326–27. Plaintiff fully agrees with this framework and acknowledges that anonymity is not the norm. However, Plaintiff submits that a correct application of these factors, in light of the facts and context described above, favors granting pseudonymity in this case.

Notably, factors (1), (2), and (4) align strongly with Plaintiff's situation: Factor (1) – as discussed, Plaintiff's whistleblower retaliation claim involves personal medical and career information of a sensitive nature, not mere "annoyance or criticism." Factor (2) – Plaintiff has shown a concrete risk of serious retaliatory harm (professional and psychological) if named. Factor (4) – Defendants are government officials/agencies sued in their official capacity, and Plaintiff seeks individualized relief (correction of his records and fairness in his case) rather than

PLAINTIFF'S MOTION FOR CLARIFICATION AND FOR LEAVE TO FILE A SUPPLEMENTAL PLEADING - 12

broad policy change, which means revealing his identity contributes little to public oversight but significantly endangers him. In fact, courts in this District have observed that when a plaintiff's challenge is "narrowly tailored to [his] individual circumstances" and the defendant is the government, the usual transparency concerns are mitigated. See Doe v. Blinken, No. 24-cv-1629, ECF No. 3 at 5 (D.D.C. June 11, 2024) (Mem. Op.) ("When a plaintiff requests individualized relief against a government defendant — as here, where Doe challenges a delay in adjudicating his SIV application — the balance tends to favor permitting pseudonymity."). By contrast, the interests on the other side of the scale – factors (3) and (5) – are either neutral or minimal here: Factor (3) (minors) is not directly applicable (Plaintiff is an adult and the case does not center on minors, though as noted some minor family members could indirectly be affected by retaliation). Factor (5) – prejudice to Defendants – is essentially nil; Defendants know Plaintiff's identity under the protective order, and allowing him to be "John Doe" publicly does not impede their ability to defend the case on the merits. The government can fully litigate FOIA and the whistleblower claims with Plaintiff remaining pseudonymous. There is no risk of unfair surprise or fraud: Plaintiff stands ready to prove his case and comply with all discovery and procedural obligations just as if his name were in the caption. The only difference is to the public record, which leads to the final consideration: the general public interest.

In many pseudonym cases, courts consider the broader public interest in open proceedings. Here, the public's interest in knowing Plaintiff's identity is outweighed by the potential harm to Plaintiff and the interest in encouraging whistleblowers to report misconduct. The subject matter of this case – alleged retaliation within a federal agency and an arguably improper discharge – can be fully understood and adjudicated by the public without knowing the Plaintiff's name. The legal issues (whether the agency violated FOIA, whether Plaintiff is

PLAINTIFF'S MOTION FOR CLARIFICATION AND FOR LEAVE TO FILE A SUPPLEMENTAL PLEADING - 13

entitled to records corrections, etc.) do not turn on who Plaintiff is, but rather on what happened to him. If pseudonymity is allowed, the public will still learn of the allegations and any judicial findings; the only thing shielded is Plaintiff's personal identity (and, by extension, his medical details). This is a reasonable trade-off in light of the substantial interests at stake. The Court's opinion did not explicitly weigh this public interest factor, and Plaintiff asks that it do so upon clarification. The D.C. Circuit has cautioned that identifying a litigant solely to satisfy curiosity or the public's prurient interest is not a sufficiently strong reason to deny pseudonymity when real harm could result. See In re Sealed Case, 971 F.3d at 329 (noting that courts should consider whether the public's understanding of the case would be enhanced in any meaningful way by knowing the plaintiff's identity, or whether pseudonymity would in fact have "little or no impact on the public's ability to follow the proceedings"). In this case, revealing Plaintiff's name adds nothing of value to the public; it would merely expose him to injury.

**2.**     District of Columbia District Court Precedents: Since In re Sealed Case, several judges of this Court have applied its factors and, under circumstances analogous to Plaintiff's, permitted pseudonymous litigation. These precedents were either not mentioned or not available to the Court when making its June 13 ruling, and they strongly support Plaintiff's request:

- Doe v. Department of the Navy, No. 1:24-cv-3403 (JEB) (D.D.C. Jan. 27, 2025). In this recent case, a pro se plaintiff sued the Navy for information and relief related to being denied a commission, claiming unlawful retaliation. Initially, the court denied pseudonymity, but upon the plaintiff's motion to reconsider (with additional evidence), Chief Judge Boasberg granted pseudonym status. The court found that the plaintiff had satisfied four of the five In re Sealed Case factors, including showing a risk of retaliatory harm (the plaintiff, an

immigrant from a U.S.-adversary country and freelance journalist, feared persecution by his country of origin if identified, as well as mental harm from exclusion in his unit) and that the case was against the government and involved personal matters. Id. (slip op. at 2–3). The Navy decision is instructive: it demonstrates that when a plaintiff bolsters the record with concrete details of feared harm and the case involves personal, retaliation-based claims, courts in this District will allow pseudonyms "as justice requires." Like the plaintiff in Navy, our Plaintiff has now provided additional corroboration of his claims (through new medical statements and logs) and highlighted specific retaliation concerns; similarly, he proceeds against a military agency and raises issues of personal privacy and whistleblowing. Plaintiff respectfully urges the Court to follow the same approach by reexamining the factors in light of the fuller record and granting the "rare dispensation" of pseudonymity, as was done in Doe v. Department of the Navy.

- Doe v. Blinken, 558 F. Supp. 3d 175 (D.D.C. 2021). In Doe v. Blinken, a Department of State employee (proceeding as "Jane Doe") challenged adverse actions by her employer and sought to proceed under a pseudonym. The court permitted her to do so, recognizing that the case involved sensitive personal matters and a significant fear of harm. While the facts of Blinken differed (it included aspects of national security and personal safety due to the plaintiff's sexual orientation and fear of persecution abroad), the overarching principle was that an employee's privacy and safety concerns outweighed the public's interest in her name. Id. at 177–78. The court explicitly noted that where a plaintiff challenges government conduct and seeks only to vindicate her own rights (not a broad injunction affecting others), pseudonymity is more readily justified because the litigation's resolution does not depend

on public knowledge of the plaintiff's identity. Id. at 178. Our case parallels that logic. Plaintiff Doe is asserting his own rights (to be free from retaliation and to correct his records) against government officials; no class or widespread policy relief is at issue. Just as in Blinken, the public nature of the proceeding can be maintained (and the government held to account) without revealing Plaintiff's name. Moreover, Plaintiff's concerns about professional retribution are akin to concerns about personal safety — both go to the core of a person's well-being and future. The Blinken decision supports that courts should err on the side of protecting a litigant's welfare when disclosure is not necessary for fairness.

• In re Sealed Case, 971 F.3d 324 (D.C. Cir. 2020). Although the Court cited this case, Plaintiff believes certain nuances from the Circuit's ruling deserve emphasis upon clarification. The Circuit reversed a district court's denial of pseudonymity in that instance, signaling that district courts must carefully articulate their weighing of each factor and ensure that any omissions of key facts or mischaracterizations are avoided. The Circuit underscored that pseudonym decisions are reviewed for abuse of discretion, but that discretion is cabined by the requirement to balance all relevant considerations. Id. at 330. Here, Plaintiff contends that the Court's June 13 opinion did not discuss some relevant considerations (e.g., the new evidence, the specific prior case law above, the nature of Plaintiff's claims) and thus the balance struck may have been inadvertently skewed. Clarifying or amending the opinion to address these points will not only result in a more just outcome in this case, but also produce a record showing that the Court has not overlooked any "controlling or significant change in the law or facts" – one of the grounds for reconsideration under this District's standards. See Cobell v. Norton, 224 F.R.D. 266, 272

(D.D.C. 2004) (a court may grant relief on a motion to reconsider an interlocutory order where it "has patently misunderstood the parties, ... or [has] failed to consider controlling decisions or data," inter alia (internal quotation omitted)). Plaintiff respectfully suggests that the decisions cited above are controlling or persuasive authorities that the Court did not mention, and the new evidence is "significant ... facts" arising since the prior ruling – thus meeting the "as justice requires" threshold for revisiting the pseudonym issue.

In light of the foregoing, Plaintiff asks the Court to clarify its Memorandum Opinion to reflect the existence and import of these precedents and standards. Had the Court been presented with Doe v. Department of the Navy or similar cases in the original briefing, Plaintiff believes the outcome might have been different. Even if the Court remains convinced that pseudonymity is a close call, an updated analysis acknowledging these authorities will ensure the decision is grounded in the full landscape of relevant law. Ultimately, Plaintiff submits that when his circumstances are measured against those of other Doe plaintiffs who have been allowed to proceed anonymously in this District, they are materially alike or even stronger in terms of the justification for anonymity. He is a whistleblower plaintiff with corroborated fears of retaliation and personal harm – precisely the type of litigant for whom courts have made exceptions to the normal rule of disclosure.

SUPPLEMENTAL PLEADING UNDER RULE 15(d)

Pursuant to Rule 15(d) of the Federal Rules of Civil Procedure, Plaintiff seeks leave to file a concise supplemental pleading to include the newly obtained evidence described above. Rule 15(d) permits a party, with court approval, to serve a supplemental pleading setting

PLAINTIFF'S MOTION FOR CLARIFICATION AND FOR LEAVE TO FILE A SUPPLEMENTAL PLEADING - 17

out events or evidence that occurred after the date of the original pleading, when that evidence is relevant to the claims at issue. Here, the sworn medical statements and Coast Guard log entries came into Plaintiff's possession only recently (after the last round of briefing on pseudonymity and after the Complaint was filed). This evidence directly bolsters Plaintiff's claims that his discharge was improper and retaliatory. It also underscores the risk of harm narrative: for example, if the logs show procedural breaches in removing Plaintiff, it suggests a motive to cover up or retaliate, which in turn supports Plaintiff's fear of further retaliation if he is identified while challenging those actions.

Importantly, allowing supplementation will "promote the just and equitable adjudication" of the case by ensuring the Court evaluates Plaintiff's pseudonym request (and ultimately the merits of his claims) on a fully informed record. See United States v. Hicks, 283 F.3d 380, 386 (D.C. Cir. 2002) (noting the court's discretion to permit supplemental filings when it aids in fully airing the facts). The supplemental pleading is limited in scope: Plaintiff intends to file a short document appending the two medical expert declarations and the key excerpts of the Coast Guard logs. This will not raise any new cause of action or fundamentally alter the nature of the case; it simply brings newly available evidence to the Court's attention. Defendants will not be prejudiced by this supplementation. They have been or will be provided copies of the new evidence under the existing protective order. They will have the opportunity to review and, if necessary, respond to or rebut the new materials in due course. The case is still at a relatively early stage (with the pseudonym issue being threshold), so considering additional evidence now will not disrupt any trial schedule or require re-opening a closed record.

Moreover, judicial economy favors considering this evidence now, in conjunction with reconsidering the pseudonymity issue, rather than forcing Plaintiff to later file separate

motions or a new action to address it. By granting leave to supplement, the Court can incorporate the fresh evidence into its clarified analysis and possibly avoid future repetitive motions. Plaintiff is prepared to file the supplemental pleading within seven days of the Court's order granting leave, and he will do so under seal (with appropriately redacted public versions if required) to maintain pseudonymity while this motion is pending.

In sum, Plaintiff respectfully requests permission to file the supplemental pleading so that the Court's clarification of its prior ruling, as well as any further proceedings on the merits, can proceed on a complete and up-to-date factual foundation.

CONCLUSION

For the foregoing reasons, and in the interest of justice and an accurate record, Plaintiff John Doe respectfully moves this Court to grant the following relief:

1. Clarification/Correction of the June 13, 2025 Opinion (ECF No. 20) – Pursuant to Rule 60(a), order that the Court's Memorandum Opinion and Order be clarified or amended to reflect the points discussed above, namely: (a) that this action is principally a military whistleblower retaliation and correction-of-records suit, not merely a FOIA case; (b) that Plaintiff has presented new and compelling evidence and allegations indicating a concrete risk of professional, reputational, and psychological harm if his identity is disclosed; and (c) that, when considering the In re Sealed Case factors alongside recent D.D.C. precedents (such as Doe v. Department of the Navy and Doe v. Blinken), the balance of interests supports allowing Plaintiff to proceed under a pseudonym. Plaintiff respectfully asks that the Court reconsider its prior denial of pseudonymity in light of these clarifications and modify its Order accordingly.

PLAINTIFF'S MOTION FOR CLARIFICATION AND FOR LEAVE TO FILE A SUPPLEMENTAL PLEADING - 19

2. Leave to File Supplemental Pleading (Rule 15(d)) – Grant Plaintiff leave to file a supplemental pleading (not to exceed one page of narrative, plus exhibits) that incorporates the newly obtained sworn medical examiner statements and Coast Guard log evidence. Plaintiff requests that the Court direct that this supplemental pleading and its attachments be filed under seal and subject to the existing protective order, given that they contain identifying and sensitive information. Plaintiff will submit the supplemental pleading within seven (7) days of the Court's order or such other time as the Court deems appropriate.

3. Maintenance of Protective Measures – Pending resolution of this Motion and any clarified ruling on pseudonymity, continue to maintain the current protective order and sealing of Plaintiff's identifying information. In particular, Plaintiff requests that the Court stay any requirement for him to file a public, unredacted version of the complaint or to reveal his name on the public docket until this Motion is decided and the pseudonymity issue conclusively resolved. This will preserve the status quo and prevent mootening of the relief sought.

4. Other Relief – Grant such other and further relief as the Court deems just and proper, including, if appropriate, conversion of this Motion to a motion under Rule 54(b) or 59(e) for reconsideration, should the Court find Rule 60(a) an improper vehicle. Plaintiff's intent is to seek substantive clarification and reconsideration to prevent manifest injustice, regardless of the precise procedural mechanism.

Plaintiff appreciates the Court's attention to these matters and stresses that this Motion is brought not to reargue every point, but to ensure that critical facts and law are not

PLAINTIFF'S MOTION FOR CLARIFICATION AND FOR LEAVE TO FILE A SUPPLEMENTAL PLEADING - 20

overlooked. By addressing the gaps identified above, the Court can be confident that its ruling on Plaintiff's pseudonymity request (a matter of great consequence to him) rests on a complete and accurate record. Plaintiff stands ready to provide any further information or briefing the Court may find useful.

Respectfully submitted,



_____

John Doe

Pro Se Plaintiff

June 30, 2025

CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(d) and Local Civil Rule 5.4 of the United States District Court for the District of Columbia, I hereby certify that I have not served the foregoing Plaintiff's Motion for Clarification and for Leave to File a Supplemental Pleading on the defendants or any other parties at this time. The document has been filed under seal in conjunction with Plaintiff's pending Motion to Proceed Under Pseudonym and Motion to Seal.

Service will be effected promptly in accordance with the Court's instructions and the Federal Rules of Civil Procedure once the Court rules on those pending motions.

Dated: <u>June</u> <u>30</u>, 2025

Respectfully submitted,



**/s/ John Doe**

John Doe (pseudonym)

---

Footnotes:

1. Local Civil Rule 7(m) requires parties to confer in good faith on all nondispositive motions. Because Plaintiff is not incarcerated and this motion does not fall under an exemption, he attempted to confer with Defendants' counsel regarding the relief sought. On June 15, 2025, Plaintiff emailed counsel for Defendants explaining the basis of this motion and inquiring their position. As of the filing of this motion, Defendants have not consented and are

expected to oppose. Given the nature of the motion (seeking clarification of a court order), Plaintiff proceeded to file to avoid delay, but will continue to meet and confer as needed.

2. Doe v. Department of the Navy, No. 24-3403 (JEB), Memorandum Opinion and Order (D.D.C. Jan. 27, 2025). In that case, the court initially denied pseudonymity but reversed course on the plaintiff's third request, after the plaintiff provided additional information. The court found that the plaintiff had demonstrated a sufficient risk of retaliatory harm (including potential harm to family abroad and mental harm due to ostracization) under factors two and three of the In re Sealed Case test, which, combined with factors one, four, and five already favoring plaintiff, warranted anonymity. The opinion underscores that a court may reconsider earlier pseudonym rulings if presented with new evidence or a clearer showing of harm – a situation analogous to the instant case.